UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAM A. JACKSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil Action No. |
| v. ) | 02-40218-FDS |
| ) | |
| EDWARD FICCO, in his capacity as ) | |
| Superintendent of the Souza Baranowski ) | |
| Correctional Center, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM AND ORDER ON APPLICATION
FOR CERTIFICATE OF APPEALABILITY

SAYLOR, J.

This matter is before the Court on an application for a Certificate of Appealability pursuant to 28 U.S.C. § 2253. Petitioner Sam A. Jackson was convicted in Massachusetts state court of assault and battery by means of a dangerous weapon and assault and battery. He is presently a prisoner at the Souza Baranowski Correctional Center in Shirley, Massachusetts. He alleges that his convictions were obtained using tainted pre-trial identification procedures and false testimony in violation of the Due Process Clause of the United States Constitution.

The evidence at trial established that Jackson grabbed the victim, Jeffrey Jones, from behind while Jones was standing in the foyer of an apartment building. Jackson held a knife to Jones's throat and slashed his lip and neck, fleeing when Jones's friend entered the foyer. *See Commonwealth v. Jackson*, 95-P-778, slip op. at 1 (Mass. Ct. App. Nov. 22, 1999) attached as Ex. C to Resp't Suppl. App. (Docket No. 17) ("Resp't App.").

Petitioner initially filed his motion for writ of habeas corpus on November 11, 2002. The matter was referred to Chief Magistrate Judge Charles B. Swartwood III on May 27, 2004, for a report and a recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge issued his Report and Recommendation on February 28, 2005, which recommended that the petition be denied. On March 31, 2005, this Court made *de novo* determinations as to those portions of the Report and Recommendation as to which petitioner made objections, and accepted the Report and Recommendation in its entirety, denying the Petition under 28 U.S.C. § 2254.

On April 25, 2005, petitioner filed a Notice of Appeal and filed an application for a Certification of Appealability pursuant to 28 U.S.C. § 2253 on July 7, 2005.

**I.    Analysis**

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 does not have an automatic right to appeal a district court's denial or dismissal of the petition. 22 U.S.C. § 2253(b). Instead, such a petitioner must first seek and obtain a Certification of Appealability ("COA") from a circuit justice or judge. 28 U.S.C. § 2253(c). By local rule, in the First Circuit, "[a] petitioner wishing to appeal from the denial of a § 2254 or § 2255 petition must file a timely notice of appeal and should promptly apply to the district court for a certificate of appealability." First Circuit Local Rule 22.1(b). Ordinarily, the Court of Appeals will not initially "receive or act on a request for a [COA] if the district judge who refused the writ is available, unless an application has first been made to the district court judge." *Id.*

A petitioner seeking a COA must demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner may satisfy the "substantial showing"

standard by "demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).  When "a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition, the [examining court] should limit its examination to a threshold inquiry into the underlying merit of his claims." *Id.* (citing *Slack,* 529 U.S. at 481 (2000)).

Under § 2253(c), the COA determination requires "an overview of the claims in the habeas petition and a general assessment of their merits," but the Court is forbidden by the statute from giving "full consideration of the factual or legal bases adduced in support of the claims." *Miller-El*, 537 U.S. at 336.  In his habeas petition, the petitioner alleges two grounds for relief: failure to suppress tainted identifications in violation of his right to Due Process and introduction of false testimony in violation of his right to Due Process.  A discussion of Jackson's substantive arguments is necessary in order to make a "general assessment" of the merits of his claims.

### A.      Pre-Trial Identification

Jackson objects principally to the pre-trial use of a photographic array for identification by the victim.  The array consisted of  "seven photographs of black males of comparable age, all with some facial hair."  Resp't App. at 2.  Jackson's photograph was the only one in which the subject had his eyes closed.  *Id.*  On April 23, 1991, Jones identified Jackson as his attacker after being shown the photographic array in question; he later identified Jones in court at the trial, without the use of the photos.

Jackson points to *Simmons v. United States*, 390 U.S. 377 (1968), in which the Supreme Court expresses concern over the trustworthiness of in-court identifications made after exposure to suggestive out-of-court identification techniques. In *Simmons,* the Supreme Court outlined a two-pronged test for determining whether an identification technique violated a defendant's right to due process: (1) whether the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification, and (2) whether, under the totality of the circumstances, the identification was nonetheless reliable. 390 U.S. at 384. *See also Manson v. Brathwaite,* 432 U.S. 98, 106 (1977). A photo identification is impermissibly suggestive only if it creates a "very substantial likelihood of irreparable misidentification." *Simmons,* 390 U.S. at 384. Even if the trial court determines that the out-of-court identification is overly suggestive, it may nonetheless admit the identification if it finds that the identification was reliable; the court must weigh the corrupting effect of the suggestive identification against various factors, including (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the level of certainty demonstrated at the identification, and (4) the time between the crime and the identification. *Manson,* 432 U.S. at 114 (citing *Neil v. Biggers,* 409 U.S. 188, 199-200) (1972).

In denying Jones's pre-trial motion to suppress the identification, the state judge found that (1) the fact that other forms of identification procedures were available or may have been preferable was not relevant to the issue of whether the identification procedure that was used was impermissibly suggestive, and (2) the number of photographs that the police showed Jones was sufficient and there was nothing about Jackson's photograph that was impermissibly suggestive. The judge further observed that although Jackson was the only subject with closed eyes and that

might "attract some limited attention to the photograph, it certainly wouldn't enhance any identification. Sometimes the eye characteristics are very important to an identifying witness, so if anything it would tend to diminish the ability of a witness to identify the defendant."[1]

After his conviction, Jackson appealed to the Massachusetts Appeals Court, raising the following issues, among others: (1) whether the out-of-court identification should have been suppressed as "impermissibly suggestive"; and (2) whether the Commonwealth violated Jackson's due process rights by knowingly presenting false testimony by Jones at trial. Resp't App. Ex. A. The MAC denied the appeal. The court found that, in light of Jones's testimony that in selecting Jackson from the array he was not influenced by the fact that one photograph depicted a man with shut eyes, the judge did not err in concluding that the array was not impermissibly suggestive. Because the array was not impermissibly suggestive, "the fact that another form of identification may have been more desirable or preferred by the defendant . . . is a non-issue." MAC Slip Op. at 4-5.

Jackson's arguments relating to the suggestibility of the array appear to be that the depiction with his eyes closed made his photograph stand out from the other individuals; the photographic array was put together based on "how petitioner looked"; the justifications for allowing a photographic identification from *Simmons* were not present; and Jones's identification was unreliable. The issue for present purposes is whether or not the procedure was impermissibly suggestive; if so, whether it was nonetheless reliable; and whether reasonable jurists could disagree with the Court's conclusion.

---

[1] Jackson filed two renewed motions to suppress the identification, each of which was denied without a hearing. Resp't App., Ex. G at 4, 5, 7.

As an initial matter, the Court notes that reliance on testimony by the victim that he was not influenced by the difference in the photograph is dubious, at best. If a procedure *were* impermissibly suggestive, the identifying party would probably not be aware of the suggestion. Moreover, the passage of time between the identification and trial (or a suppression hearing) might well have the effect of convincing the victim that he made the correct identification, because the image of that individual might have replaced the image of the actual assailant. Indeed, this was a concern of the Supreme Court in *Simmons* as to the reliability of in-court identifications after a suggestive out-of-court misidentification. Therefore, this Court will not rely on the victim's testimony relating to the out-of-court identification in determining whether the array was impermissibly suggestive.

This Court, the MAC, and the trial judge have all noted that an array of photographs depicting six individuals with open eyes and one (the petitioner) with closed eyes draws some attention to the unique photograph. It does not necessarily follow, however, that the array was impermissibly suggestive. The Court must consider the totality of the circumstances to make that determination.

One of the circumstances to be considered is the number of photos in the array. The array in question comprised seven photos, which is an adequate number. *United States v. Turner,* 892 F.2d 11, 14 (1st Cir.1989). That element cuts against a finding of impermissible suggestiveness. *United States v. Maguire*, 918 F.2d 254, 263 (1st Cir. 1990)

Another circumstance is the nature of the difference in the photographs. In a case similar to the present one, the Tenth Circuit has also held that a photographic array of six photos was not impermissibly suggestive when the defendant was shown with his eyes closed along with photos

6

of five individuals with their eyes open.  *United States v. Sanchez*, 24 F.3d. 1259, 1263 (10th Cir. 1994).  *Cf. United States v. Wiseman*, 172 F.3d 1196, 1208 (10th Cir. 1999) (photographic array of six photos was impermissibly suggestive where the defendant was shown with "very prominent dark circles under his eyes and with an extremely unnatural, chalk-white pallor" not present in the other photos).

Petitioner also appears to argue that the photographic array was impermissibly suggestive because it was based on *his* appearance rather than the description of the assailant given by the victim.  The array was arranged after Detective Scirpoli became independently aware, through another investigation, of information that the petitioner may have been Jones's attacker.  The Supreme Court, however, upheld an array against a similar challenge in *Simmons*, where an investigation of a bank robbery pointed to the defendants and FBI agents borrowed snapshots of the defendants from a relative to show to the witnesses.  390 U.S. at 380.  Accordingly, the fact that the array was based on photographs similar to Jackson's, where the arranging officer had reason to suspect Jackson's involvement in the crime, does not, standing alone, make it impermissibly suggestive.

Considering the totality of the circumstances, the procedure was not so impermissibly suggestive as to raise a substantial likelihood of irreparable misidentification.  Because the Court finds that the procedure was not impermissibly suggestive, the Court need not evaluate the reliability of the in-court identification.  *Maguire*, 918 F.2d at 263.  The Court further finds that reasonable jurists would not disagree with that conclusion, given the settled nature of the applicable legal principles and petitioner's failure to identify any reasons, factual or legal, to justify a different result in this instance.  Petitioner's request for a Certificate of Appealability as

to the photo identification procedure will be denied.

>  B.  **Introduction of False Testimony**

Petitioner further claims that the prosecution introduced false testimony in violation of his right to due process. A "conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). The same result follows when the state "although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.* "[A] lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth." *Id.* at 269-270.

Petitioner specifically alleges that the following statements, given at the suppression hearing and regarding Jones's description of the assailant, were all false testimony: (1) Detective Scirpoli's testimony that Jones could not tell him how tall the assailant was; (2) Detective Scirpoli's testimony that Jones described the assailant as a thin black man; (3) Detective Scirpoli's testimony that Jones told him he could not be certain that the assailant was 5'7" and 150 pounds; (4) Detective Scirpoli's testimony that Jones told him the assailant had a "couple days of hair growth on his face"; (5) Jones's testimony that the assailant was 6'3" to 6"4"; (6) Jones's testimony that the assailant had a mustache and some hair about the cheeks and chin areas; and (7) Jones's testimony that he told Officer O'Rourke that the assailant was 6 inches taller than himself and about his age. Petitioner has not presented any direct evidence of falsity, but appears to argue that the inconsistencies in the various witnesses' testimony is evidence that

is necessarily false.[2]

The MAC concluded that, given the nature of the testimony which Jackson claimed was false, the Commonwealth had no basis for concluding that Jones had committed perjury. As noted in the Report and Recommendation of the Magistrate Judge, factual findings by the state court are entitled to substantial deference and the presumption of their correctness must be rebutted by clear and convincing evidence. Rather than revisit the analysis of the Magistrate Judge, it is sufficient to note that the alleged inconsistencies may be readily explained by "faulty recollection," as the Massachusetts Appeals Court concluded, or are not inconsistent at all. There is certainly no evidence that the state deliberately elicited false evidence.

Under the circumstances, the Court finds that the defendant has not shown by clear and convincing evidence that the factual findings of the state courts were incorrect. The Court further finds that reasonable jurists would not disagree as to that conclusion. Accordingly, petitioner's request for a Certificate of Appealability as to the alleged introduction of false testimony will be denied.

---

[2] Petitioner also argues that Jones testified at trial that he had identified Jackson as the assailant on cross-examination by Jackson at the suppression hearing, when it was in fact the prosecution who asked Jones whether his assailant was in the courtroom at the suppression hearing. While Jackson is correct that a conviction obtained on evidence known by the state to be false, may not stand, in order for the conviction to be *obtained* on that evidence, it must evidence that "reasonably could have affected the judgment of the jury." *Commonwealth of Massachusetts v. Daigle*, 379 Mass. 541, 546 (1980) (citing *Napue*, 360 U.S. at 264; *Giglio v. United States*, 405 U.S. 150 (1972)). The fact that one party or another elicited Jones's in-court identification has no effect on the a jury's decision, nor does Jackson offer any evidence or theory on how it could. Regardless of which party evoked the identification, Jones made an in-court identification of Jackson as his assailant. Consequently, Jackson has not proved by clear and convincing evidence that the MAC determination that this false statement was harmless is debatable among reasonable jurists.

**II.      Conclusion**

For the reasons stated above, petitioner's application for a Certificate of Appealability is

DENIED.

**So Ordered.**

/s/ F. Dennis Saylor<br>
F. Dennis Saylor IV<br>
United States District Judge

Dated: October 4, 2005